# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 03-3628

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JUAN JOSE SILVA,

*Defendant-Appellant.*

————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:02 cr 55-02—**Rudy Lozano**, *Judge.*

————————

ARGUED MAY 17, 2004—DECIDED AUGUST 18, 2004

————————

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Juan Silva was the subject of an extensive undercover operation that included a confidential informant, ground and aerial surveillance, and tape-recorded conversations. A jury convicted Silva of conspiracy and possession with intent to distribute methamphetamine. See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. §1952. Sentenced to 121 months' imprisonment, he argues on appeal that he was convicted on the basis of hearsay and is entitled to a new trial.

A few examples of the evidence to which he objected will suffice. Agent Zamora, who coordinated the operation for

the Drug Enforcement Administration, testified at trial to conversations conducted between the DEA's confidential informant (whose identity remained secret and who therefore did not testify) and an alleged supplier, regarding a future sale of methamphetamine. Zamora testified that he heard the supplier (who likewise did not testify) use the name "Juan" several times during the conversations and that the informant spoke on several occasions of "this individual named Juan [who] indicated that he was going to be making the delivery." Other testimony elicited from Zamora and another agent concerned the attempted delivery of a sample of Silva's wares and conversations between Silva and the informant, plus the informant's observations.

The district judge overruled hearsay objections and instructed the jury that the evidence was "not being offered for the truth of the matter." That's surprising, for the evidence directly inculpated Silva. See Fed. R. Evid. 801(c). Perhaps its admission could have been justified under the co-conspirator exception to the hearsay rule. See Fed. R. Evid. 801(d)(2)(E). Yet this is not what the prosecutor contended, and the judge did not find that the speakers were Silva's confederates and that the declarations had been in furtherance of a joint enterprise. See Fed. R. Evid. 401; *United States v. Ferra*, 900 F.2d 1057, 1059-60 (7th Cir. 1990).

So to what issue *other* than truth might the testimony have been relevant? The prosecutor contends that most of the statements were admissible to show "the actions taken by [each] witness". Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule. This court has warned against the potential for abuse when police testify to the out-of-court statements of a confidential informant. See *United States v. Lovelace*, 123 F.3d 650 (7th Cir. 1997). See also *McCormick on Evidence* §249 (5th ed. 1999). There are no doubt times when the testimony regarding a tip from an

informant is relevant. If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out Silva for nefarious purposes. No such argument was made in this case, however, and no other explanation was given why the testimony would be relevant. Under the prosecution's theory, every time a person says to the police "X committed the crime," the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers. See *Crawford v. Washington*, 124 S. Ct. 1354 (2004).

Here's another illustration. Police officer Jocson testified about a traffic stop of Luis Madrid for speeding. Silva was a passenger in this car. Jocson, who was unaware when he stopped Madrid's car that both Silva and Madrid were the targets of a federal investigation, testified that a search of the car turned up a few bundles of cash totaling $16,000 and "some plant-like materials consistent with cannabis". He continued: "At that time I called a crime scene technician to do a vacuum sweep of the trunk area to try to retrieve some of this plant like material, which we later tested as positive for cannabis." The court overruled Silva's objections and instructed the jury that the positive test—of which Jocson had no first-hand knowledge—was "not being offered for the truth of the matter, but for the actions taken by this officer only."

In what way could test results have explained Jocson's actions, let alone been relevant to the charges for which Silva was on trial? Jocson did not find methamphetamine. He was not aware of the federal investigation, and the lab tests, which post-dated the traffic stop, could not have "explained" any of Jocson's actions on the scene. Silva was not charged with any offense related to marijuana, and none of the serial numbers on the bills matched the serial numbers from the cash that had been used in the monitored metham-

phetamine transaction. So the evidence about events during and after the traffic stop either was irrelevant or was being used to show that Silva had a propensity for drug dealing. See *United States v. Beasley*, 809 F.2d 1273 (7th Cir. 1987). The latter explanation seems superior: when the prosecutor asked Jocson what he thought the cash revealed, Jocson replied that he thought it "was the result of drug smuggling acts, which would essentially be proceeds from narcotics transactions."

Perhaps all of this could be dismissed as harmless. The record has plenty of admissible evidence, and the judge did tell the jury that the contested evidence had not been admitted for a substantive use. Come the closing argument, however, the prosecutor explicitly used some of the hearsay as evidence of Silva's guilt. Defense counsel objected to the violation of the court's rulings that the evidence was not to be used to show Silva's culpability. Instead of sustaining the objection and giving a curative instruction, see *Jones v. Lincoln Electric Co.*, 188 F.3d 709 (7th Cir. 1999), the judge told the jury:

> The jury will determine what the evidence shows and why it was admitted. If it was admitted for a different purpose, they will make that decision. I ruled on all of that. They heard the evidence. And if the evidence was not admitted for that purpose, they will so take it into account.

What was the jury to make of this? It left the prosecutor's transgressions without correction. Inviting a jury to decide for itself what evidence to use and how to use it amounts to abdication by the district judge. The subject before the court was not merely "what the evidence shows" (a perfectly acceptable question for the jury) but also whether the evidence was admissible for the purpose for which the prosecutor was using it. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). When the prosecutor violated the limitations on the evi-

dence's use, the judge had to set things straight. This he failed to do; instead of enforcing his rulings, he abandoned them and deferred to the prosecutor and the jurors.

Silva's brief complained at length about the closing argument and the judge's failure to stop the prosecutor in his tracks. The brief for the United States, by contrast, ignored the subject. The prosecutor has not attempted to justify the closing argument or the judge's perplexing instruction. And by ignoring the subject the United States has forfeited any opportunity to contend that the error was harmless. We decline to exercise our discretion to invoke the harmless- error doctrine on our own. See *United States v. Giovannetti*, 928 F.2d 225, 226-27 (7th Cir. 1991); *United States v. Pryce*, 938 F.2d 1343 (D.C. Cir. 1991). Far too much use was made of hearsay in this trial. Silva is entitled to another.

REVERSED AND REMANDED

A true Copy:

      Teste:

                           _____

                           *Clerk of the United States Court of Appeals for the Seventh Circuit*