**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 5, 2009
Decided October 7, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2396

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v.* <br><br> JAMES THOMAS, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> 06 CR 701-1 <br><br> Rebecca R. Pallmeyer, <br> *Judge*. |

**O R D E R**

Following a jury trial, James Thomas was convicted of possession of a firearm after a felony conviction, *see* 18 U.S.C. § 922(g)(1), and the district court sentenced him under the Armed Career Criminal Act to 240 months' imprisonment, *see id.* § 924(e)(1). Thomas filed a notice of appeal. Appointed counsel, however, is unable to discern a nonfrivolous basis for the appeal and moves to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). We invited Thomas to comment on counsel's submission, *see* CIR. R. 51(b), but he has not responded. We limit our review to the potential issues identified in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

On the evening of March 30, 2006, Crystal Johnson was walking home when she saw Thomas, whom she knew as a friend from the neighborhood. Thomas, however,

immediately shoved her against the wall of a nearby garage, held a gun to her neck, and said, "Bitch, this is your calling card." Just as this was happening, Johnson spotted a passing police car and yelled for help, shouting that Thomas had a gun. The officers stopped their car, and Officer Mike LaChance saw Thomas walk away and throw the gun over a fence. Officer LaChance gave chase and caught Thomas, while his partner, Officer Edward Garcia, retrieved the fully loaded gun.

At trial the parties stipulated that Thomas had a prior felony conviction and that the gun had traveled in interstate commerce, leaving the government to prove only that Thomas had possession of the gun. *See United States v. Caldwell*, 423 F.3d 754, 757 (7th Cir. 2005). The two officers and Johnson all testified that they saw Thomas holding the gun. An expert in latent fingerprint identification testified that, as is common with firearms, only partial prints, impossible to identify, were found on the gun. Thomas's defense focused on the credibility of the three eyewitnesses; counsel highlighted inconsistencies in the officers' testimony and argued that, because Johnson was a drug user with criminal charges pending against her at the time of the incident, her testimony was unreliable. The jury believed the witnesses anyway, and found Thomas guilty. The district court denied his posttrial motions for mistrial and acquittal.

At sentencing the district court determined that, in holding the gun to Johnson's head, Thomas had used the gun in connection with a crime of violence, and that, based on his prior convictions, he qualified for sentencing as an armed career criminal, *see* 18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.4(a), (b)(3)(A). The court therefore applied the resulting offense level of 34 and criminal history category of VI to reach a guidelines imprisonment range of 262 to 327 months. Next the court considered the mitigating evidence—Thomas's strong family ties, troubled childhood, educational and emotional difficulties, and recent efforts to seek treatment—and imposed a below-guidelines sentence of 240 months' imprisonment.

Counsel first considers whether Thomas could argue that the trial evidence is insufficient to support his conviction. We would overturn the jury's verdict only if, after viewing the evidence in the light most favorable to the government, no rational jury could have found him guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009). Counsel postulates that Thomas might challenge the credibility of the witnesses, argue that the absence of his prints on the gun refutes their testimony, or submit additional evidence to show that the gun was originally purchased by another individual. Counsel is correct, however, to reject each possibility as frivolous. Three eyewitnesses testified that they saw Thomas with the gun in his hand and saw him throw it over the fence, where it was immediately recovered. We will not second-guess a jury's determination to credit a witness unless the testimony was "so implausible that it cannot be trusted as a matter of law." *United States v. Calabrese*, 572 F.3d

362, 369 (7th Cir. 2009). At trial Thomas pointed to Johnson's previous drug use and to the officers' minor inconsistencies about the clothing Thomas was wearing, about whether they drove past or stopped when they first saw him with Johnson, and about whether he walked or ran from the scene. But none of this would render the witnesses' testimony incredible as a matter of law. *See id.* ("Neither inconsistencies nor motive to fabricate are capable of rendering testimony legally incredible."); *United States v. Williams*, 553 F.3d 1073, 1080 (7th Cir. 2009) (refusing to second-guess jury's decision to believe witnesses who had prior felony convictions, a history of lying, and motive to testify against the defendant). And although the police found no identifiable prints on the gun, the government's expert testified that identifiable prints are rarely recovered from firearms. Finally, counsel's supposition that Thomas might ask this court to consider additional, non-record evidence would also be a non-starter, as we would not consider evidence that the jury did not have. *See Moore*, 572 F.3d at 337; *see also Ruvalcaba v. Chandler*, 416 F.3d 555, 563 (7th Cir. 2005) (noting that "we generally decline to supplement the record on appeal with materials that were not before the district court").

Counsel next considers whether Thomas could argue that the prosecutor committed misconduct during closing argument when, in describing Thomas's actions, he stated, "All the time bad people attack other people that might be considered to be bad people." Thomas's counsel immediately objected, and the trial court instructed the jurors that argument by counsel is not evidence and that they could consider only the evidence presented from the witness stand. Given Thomas's objection, we would review the court's ruling for an abuse of discretion. *See United States v. Clark*, 535 F.3d 571, 580 (7th Cir. 2008). "[I]mproper comments during closing arguments rarely rise to the level of reversible error," *United States v. McMath*, 559 F.3d 657, 667 (7th Cir. 2009) (internal quotation marks and citation omitted), and in evaluating such comments, we consider whether the remarks in isolation were improper, and, if so, we then evaluate the remarks in the context of the entire record and assess whether they caused the defendant prejudice by denying him a fair trial, *United States v. Myers*, 569 F.3d 794, 798 (7th Cir. 2009); *Clark*, 535 F.3d at 580. Here, to the extent that the prosecutor's remark could be interpreted as implying that Thomas was "bad" and had a propensity to attack other people, it was improper. Considering the remark in context, however, we could not conclude that he was prejudiced. The prosecutor's remark was made during the government's rebuttal argument, and although Thomas did not have an opportunity to rebut it, defense counsel invited the remark by improperly arguing that Johnson, a drug user, perhaps "had crack in her pocket" or might have been high, giving her motive to lie about the assault. *See Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) (explaining that evidence of drug use may be used to impeach a witness's recollection of events but not for the impermissible "inference that drug users tend to lie"); *United States v. Robbins*, 197 F.3d 829, 843 (7th Cir. 1999) (concluding that defense attacks on witness credibility invited prosecutor's attempt to "right the scale"); *United States v. Magana*,

118 F.3d 1173, 1196 (7th Cir. 1997) (suggesting that defendant will have difficulty establishing prejudice "if defense counsel strikes the first blow" and "the prosecutor attempts to even the scales by making a reasonable but otherwise improper response"). The prosecutor's comment did not misstate the evidence or implicate a specific right, and the court mitigated the effect of the comment by promptly instructing the jury to consider only the evidence presented. *See Clark*, 535 F.3d at 581; *Robbins*, 197 F.3d at 843. Jurors are presumed to follow their instructions, and counsel cannot identify any reason to believe that the jury was so tainted by the comment that the limiting instruction was ignored. *See Clark*, 535 F.3d at 581; *United States v. Serfling*, 504 F.3d 672, 677 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1718 (2008). Moreover, the evidence weighs strongly against Thomas given that all three eyewitnesses saw him with the gun. *See Clark*, 535 F.3d at 580-81; *Serfling*, 504 F.3d at 677 (explaining that weight of the evidence is "the factor 'most important' to the prejudice inquiry"). In light of this evidence and the court's curative instruction, we agree with counsel that arguing that the comment prejudiced Thomas would be pointless.

Counsel also evaluates whether Thomas could contend that the district court erred in refusing to exclude as unduly prejudicial Johnson's testimony that Thomas threatened her with the gun. We review rulings on objections under Federal Rule of Evidence 403 for abuse of discretion. *United States v. Samuels*, 521 F.3d 804, 813 (7th Cir. 2008). Counsel posits that Johnson's testimony made the incident sound frightening and was unnecessary, but this testimony was probative of Johnson's credibility: she not only saw the gun in Thomas's hand, but she saw it up close to her face and felt it against her neck. "'Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case.'" *United States v. Perkins*, 548 F.3d 510, 515 (7th Cir. 2008) (quoting *United States v. Dennis*, 497 F.3d 765, 769 (7th Cir. 2007)). Rather, the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value such that the jury may be induced to decide the case on emotional grounds or some other improper basis. *See id.*; *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008). And here, as the result of a separate motion *in limine*, the government refrained from eliciting testimony about Johnson's emotional state during the assault. We therefore agree with counsel that a claim about this testimony would be frivolous because the possible prejudice to Thomas did not substantially outweigh the probative value of Johnson's testimony.

Finally, as to the trial, counsel assesses whether Thomas could challenge the denial of his motion to call the prosecutor as a witness to impeach Officer LaChance's testimony that he remembered the clothing Thomas was wearing. The district court concluded that the prosecutor's testimony was unnecessary because Thomas could cross-examine Officer LaChance, and, indeed, Thomas successfully obtained an admission that the officer had not told the prosecutors about the clothing before trial. *See United States v. Ashman*, 979 F.2d 469, 493-94 (7th Cir. 1992) (upholding district court's denial of motion to call prosecutor

where information was available from another source). Thus, any argument that the court's ruling was an abuse of its discretion would be frivolous.

As to Thomas's sentence, counsel questions whether he might argue that the district court committed "minor errors" in the course of sentencing. But the court committed no error at all. As the sentencing transcript shows, the parties agreed and understood that Thomas was being sentenced under U.S.S.G. § 4B1.4 as an armed career criminal. The court found that Thomas had assaulted Johnson with the gun, and although, as counsel notes, the court stated that "a 2K2.1(b)(6) finding is appropriate here," it went on to apply the correct offense level and criminal history category under the armed career criminal guideline for a defendant who used the firearm in connection with a crime of violence, *see* U.S.S.G. § 4B1.4(b)(3)(A), (c)(2); *United States v. Vallejo*, 373 F.3d 855, 859-60 (7th Cir. 2004).

Last, counsel considers whether Thomas could argue that his trial lawyer was ineffective. As counsel acknowledges, we rarely consider a claim of ineffective assistance on direct appeal because the appellant cannot develop a factual record and must rely solely on the trial record, from which ineffective assistance is rarely apparent. *See United States v. Recendiz*, 557 F.3d 511, 531-32 (7th Cir.), *petition for cert. filed* (U.S. Aug. 21, 2009) (No. 09-238). Appellate counsel points to the trial lawyer's statement in the record that she limited her attack on Johnson "in many areas that would have been inflammatory" because of "certain things that the defense knew and chose not to go into." This statement, counsel suggests, could be read to suggest that the trial lawyer should have brought forth "even more damaging evidence" to attack Johnson's credibility. But none of this evidence is currently in the record, nor is there any evidence that the decision to limit the attack on Johnson was anything but a strategic move. *See id.* at 532; *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005). Thus, a claim that trial counsel's ineffectiveness is obvious on the face of the trial record would also be frivolous.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.